IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHAEL J. SHEFFIELD,

                                       OPINION AND ORDER

           Plaintiff,

                                        14-cv-24-bbc

   v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Michael J. Sheffield is seeking judicial review of a final decision by defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying his application for disability insurance benefits and supplemental security income.  The administrative law judge who heard the case found that plaintiff's claims of permanently limiting back pain and degenerative disc disease were not supported by plaintiff's own statements or by the medical evidence in the record.  His conclusion that plaintiff was capable of performing the full range of light work was upheld by the Appeals Council and became the agency's final decision.

      Plaintiff contends that the administrative law judge erred in two ways: (1) he failed to give proper weight to the opinion of Dr. Jane Stark, a specialist in occupational medicine who examined plaintiff on two occasions; and (2) he ignored a vocational assessment from the University of Wisconsin-Stout that supported plaintiff's application.  The record shows

1

the reasons why the administrative law judge gave only "some weight" to Dr. Stark's assessment that plaintiff could perform a limited range of light work. Those reasons are supported by substantial evidence in the record, including the opinions of other medical specialists who examined plaintiff. Substantial evidence also supports the administrative law judge's decision not to give any weight to the UW-Stout vocational assessment.

RECORD FACTS

Plaintiff was a 41-year-old high school graduate on September 21, 2009, when he allegedly became disabled and left his job as assistant sewer treatment plant operator for the City of Ladysmith, Wisconsin. Thereafter, he applied for worker's compensation and for social security disability income benefits, claiming to suffer from permanently limiting back pain and degenerative disc disease.

In a December 12, 2009 function report submitted to Social Security, plaintiff said his activities were limited to daily stretching and minor chores around the house, driving to town once a week, taking a one-mile walk two to three times each week, caring for his two dogs, preparing meals, working at waist level and shopping for food. AR 221-22. Mostly, he said, he lay on his couch for 12-16 hours a day. AR 219, 227. He complained of pain when bending, difficulty with sitting for any length of time and the tendency of his left leg to fall asleep. AR 220.

Plaintiff saw a number of doctors after he left his job. In September 2009, he saw his internist, John Ziemer, complaining of having had intense back pain for three months. Dr.

Ziemer found that plaintiff had intact range of motion, symmetrical reflexes, intact sensation and negative straight leg raising. He recommended physical therapy and scheduled an MRI. AR 339-41. In October 2009, plaintiff saw Dr. Eric Carlsen, a physical medical specialist. Dr. Carlsen reviewed plaintiff's x-rays and MRI results and found relatively mild disc bulging in the lumbar spine of the sort "not uncommon in a 41-year-old back." AR 351. He noted plaintiff's relatively normal gait, his ability to walk briefly on his heels and toes, some back pain with straight leg raising and a give-away quality of weakness in his left leg. (Give-away weakness can indicate malingering or other functional weakness; it is characterized by a sudden cessation of normal strength of effort. http://www.merckmanuals.com/professional/neurologic_disorders/approach_to_the_neurologic_patient, visited Dec. 15, 2014.) Id. Carlsen told plaintiff he did not think his injury was work-related and that it was likely it would respond to conservative treatment. He thought plaintiff could return to work in 4-6 weeks if he continued to make good progress with physical therapy. AR 352.

In November 2009, plaintiff saw both Dr. Joseph Holt, a doctor of internal medicine, and Dr. Phillip Porter, a neurosurgeon. Dr. Holt observed that plaintiff was in no acute distress and walked with a slight limp. AR 354-55. Dr. Porter noted that plaintiff had stiffness and tenderness, but negative straight leg raising, full strength in his lower extremities, normal gait and intact sensory testing. He wrote that plaintiff was reporting his condition as 35-40% better than when he was at his worst. Porter did not recommend surgery, finding it excessive in plaintiff's condition, and he encouraged plaintiff to continue

with conservative measures, including physical therapy. AR 271-73. (Porter wrote a report in March 2012 in which he found plaintiff disabled within the meaning of the Wisconsin Administrative Code; the administrative law judge gave this report no credence because it did not reflect any of the doctor's testing of plaintiff or the results of imagining. AR 28.)

In December 2009, Dr. Justin Boge gave plaintiff a diagnostic and therapeutic injection in December and advised him he could prevent further back pain by losing weight, stopping smoking and engaging in physical therapy to strengthen his core. AR 418. In the same month, physician's assistant Carol Krupa gave plaintiff a temporary return to work, limiting him to lifting 10 pounds frequently and 20 pounds occasionally, seldom bending, twisting or working from floor to waist, no walking on uneven or slippery surfaces, alternating standing and walking as needed and stretching every 30 to 60 minutes. AR 364.

Also in December 2009, plaintiff Dr. Mark Roberts, who told plaintiff he could return to work halftime at light duty, with no lifting over 20 pounds, seldom bending, pivoting or twisting at the waist, rotating jobs every two hours and alternating sitting, standing and walking as needed. AR 362. Plaintiff was to stretch and pause every 60 minutes. Id. He advised plaintiff to get out to walk more to increase his activity. Id.

Dr. Jane Stark, a physician in the Department of Occupational Medicine at the Marshfield Clinic, examined plaintiff in April 2010 for worker's compensation purposes and found him capable of lifting 20 to 30 pounds, sitting for five to ten minutes at a time before having to change his positions and needing frequent alteration between positions. AR 322. She limited plaintiff to only occasional bending or twisting at the waist, climbing stairs or

4

steps, working over shoulder height and below waist height, pushing or pulling with his hands or reaching with outstretched arms, and only seldom kneeling, squatting or crawling. She advised him to avoid ladders and unprotected heights "due to some instability with his motion." Id. She believed plaintiff had reached the end of healing and would have waxing and waning symptoms and she advised him that if the symptoms returned, he should see a special physical therapist with expertise in pelvic dysfunction. Id.

In August 2010, Dr. Mark Schlimgen administered two epidural injections to plaintiff and encouraged him to resume his exercise regime to stretch and strengthen his back. AR 405.

Dr. Stark saw plaintiff a second time in December 2010. She recorded increased subjective complaints, recommended conservative care in the form of "aggressive physical therapy" and noted that some of her findings indicated the possibility of improvement. AR 601-02. Plaintiff had four sessions of physical therapy at Blue Hill Rehabilitation, as recommended by Dr. Stark, but stopped going in January 2011, saying that he could no longer afford the cost of the sessions. AR 502. The physical therapist counseled him about "working smart" and told him that lying on the couch for most of the day was not a healthy option. Id.

Dr. Carlsen saw plaintiff a second time, in July 2011, when he examined plaintiff for the Social Security Administration. AR 539-44. He noted that plaintiff reported occasional tingling in his left leg, had 4/5 muscle strength with some "give-away" weakness on the right and 3/5 on the left, positive supine straight leg raising, on the right at 20 degrees, on the left

at 10 degrees. He noted also that plaintiff preferred to stand and that he changed positions during the examination. Carlsen found no obvious neurological impingement and only mild posterior disc bulging in L4-5 and L5-S1. He estimated plaintiff's functional capacity in the light-medium range. AR 544.

Plaintiff applied for services from the state Division of Vocational Rehabilitation in September 2011. The agency found him eligible for services because of his disabilities and referred him to the University of Wisconsin-Stout for an employment-based assessment of his disabilities and transferable skills, among other things. AR 582. In evaluating his disabilities, the UW-Stout evaluator did not perform a physical examination, but relied on Dr. Stark's April 26, 2010 workers' compensation examination. Ar 584. In addition, she took into consideration plaintiff's statements that no doctor had released him to any work; he had to lie down during the day; he had to constantly change positions, could not drive, stand or walk for any length of time; he was experiencing increased pain; he used a cane for walking; and he expected he would need back surgery. AR 580. Plaintiff also told the evaluator that he had dyslexia. AR 587. The evaluator reported that in their meetings, plaintiff had to change positions frequently and that he exhibited great pain when he did so. Id.

In case notes, a Division of Vocational Rehabiliation case worker wrote that plaintiff's pain had increased dramatically since the previous meeting and that he was planning to meet with his doctor to discuss options that might include surgery. AR 589. The division closed plaintiff's case on December 6, 2011 (apparently because he seemed physically incapable of

6

working), informing him that he could reapply for services at any time. AR 579, 589.

Eight days later, on December 14, 2011, plaintiff was seen by Michael Chu, a physician in the Physical Medicine Department at the Marshfield Clinic. Id. Dr. Chu found that plaintiff's MRI results did not support his complaints of pain. AR 642. To assure himself that plaintiff's condition had not changed for the worse, Chu had another MRI taken of plaintiff's lumbar spine, AR 641; the test showed no unusual degenerative disc changes. After seeing the MRI, Dr. Chu declined to complete a disability form for plaintiff. AR 642. Instead, he recommended that plaintiff undergo a more aggressive functional rehabilitation program, "as one of his doctors had suggested in the past." Id.

Two state agency physicians reviewed the medical evidence. On February 9, 2011, Dr. David Kamper found that plaintiff could lift 10 pounds frequently, 20 pounds occasionally, sit, stand or walk for about six hours in a day and push or pull without any limitation other than for lifting. AR 504-05. He also found that plaintiff should never climb a ladder or scaffold and kneel or crawl only occasionally and had no manipulative, visual, communicative or environmental limitations. AR 506-07. He found plaintiff's statements about his ability to function "only partially credible" because his complaints appeared "to be more than could be reported by" his scans and x-rays. AR 508. On August 9, 2011, Dr. Janis Byrd reviewed the file, concluded that plaintiff's x-rays and MRI's continued to show only mild degenerative disc disease and degenerative joint disease and confirmed Dr. Kamper's assessment. AR 545.

After summarizing and reviewing the evidence, the administrative law judge found

that it supported findings that plaintiff had the severe impairments of disc disease and early disc degeneration, but no others, AR 21, that neither of his severe impairments met or equaled a listed impairment, whether considered alone or in combination, AR 21-22, and that plaintiff retained the residual functional capacity to perform the full range of light work, as defined in 20 C.F.R. §§ 404.1527 and 416.927.  His decision was upheld by the Appeals Council, leading to plaintiff's request for judicial review in this court.

OPINION

A. Dr. Stark's Assessment

Plaintiff's first challenge to defendant's adverse decision centers on the administrative law judge's reading of Dr. Stark's two assessments of plaintiff's residual functional capacity. Plaintiff faults the administrative law judge for mischaracterizing the assessments, for not saying how much weight he was placing on them, for not evaluating them in light of the requirements of SSR 96-2p and for not considering the "checklist factors" when rejecting parts of them.  Plaintiff also contends that the administrative law judge seemed to infer from the fact that Dr. Stark determining that plaintiff had a 9% disability rating for workers' compensation purposes that she did not believe that plaintiff was disabled.  However, plaintiff does not identify anything in the administrative law judge's lengthy decision that would support this last contention, so it is not necessary to address it.

I understand plaintiff's claim of mischaracterization to be that the administrative law judge misread Dr. Stark's assessment as saying that plaintiff retained the capacity to perform

8

a wide range of work at the light and sedentary exertional levels. AR 25. If so, he erred, according to plaintiff, because he did not acknowledge the erosion in the occupational base resulting from Stark's limitations on plaintiff's postural activities and his need to alternate positions while working. Although the administrative law judge might have left this impression when he first discussed Dr. Stark's assessment, AR 25, he made it clear later in his opinion that he understood her assessment as limiting plaintiff's ability to perform the full range of light work. He explained that he did not accept that part of her assessment in which she limited plaintiff to sitting for ten minutes or less at one time or imposed restrictions on plaintiff's ability to do things like reaching, bending, etc., because the "restrictions were not consistent with the objective evidence, or the treatment course." AR 28. As he stated, they were contradicted by Dr. Carlsen's consultative examination in July 2011, id., by the absence of any third party statements that might support plaintiff's claims, AR 27, by the repeated encouragement plaintiff received from his treating and examining physicians to increase his activity and pursue aggressive physical therapy, id., by the evidence that his daily activities had at times exceeded those to which he testified at the hearing, id., by the lack of any objective evidence of dramatic change since he first reported his back pain and sought treatment in 2009-10, by the reports that his symptoms were reduced by physical therapy and by his seeking and obtaining unemployment benefits in 2010-11 (for which he had to show he was ready, able and willing to accept work). AR 27-28.

This is not an example of cherry-picking the record, as plaintiff alleges, citing Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2013). The administrative law judge did not simply

9

pull evidence from the record that supported his opinion and ignore evidence to the contrary.  He chose to reject certain evidence but explained why he was doing so and his explanations are well supported by the evidence.

Next, plaintiff challenges the administrative law judge's failure to state how much weight he was placing on Dr. Stark's assessment, in violation of the general rule directing him to explain what weight he is giving to physician opinions and why.  In fact, the administrative law judge wrote that he was giving *some* weight to Stark's report "insofar as [it was] consistent with the finding that [plaintiff] could perform light exertional work activity." AR 28.  He rejected her opinion as it related to plaintiff's ability to sit for less than ten minutes or less at one time or that otherwise restricted his residual functional capacity below the light level, for the reason stated above: the "restrictions were not consistent with the objective evidence or the treatment course."  Id.  In reaching this conclusion, the administrative law judge did not violate the holding in Beardsley v. Colvin, 758 F.3d 834, 839 (7th Cir. 2014), that the opinion of an examining physician is not to be rejected except "for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice."  He relied on the reports of another examining source, Dr. Eric Carlson, a specialist in physical medicine, and he explained why he found Carlsen's report more persuasive.  Like Dr. Stark, Dr. Carlsen examined plaintiff on two different occasions, but he reached the conclusion that plaintiff had the residual functional capacity to perform work in the light-medium range.

Although the general rule is that an examining source is to be given more weight than

a non-examining source, the administrative law judge gave the "greatest weight" to the opinions of the agency's medical consultants, neither of whom ever examined plaintiff. However, he explained that he was doing so because their opinions "were consistent with the record as a whole, including the conservative treatment course, [plaintiff's] reliance on prescription medication (with no documented side effects), and with his lack of complete credibility." AR 28.

Plaintiff cites SSR-96p for the proposition that controlling weight must be given to the opinions of *treating* physicians, without acknowledging that controlling weight is to be given only if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record. 20 C.F.R. § 404.1527(c)(2). The rule does not apply to an *examining* physician such as Dr. Stark. Nevertheless, as Beardsley holds, the administrative law judge must explain why he is rejecting the opinion of an examining physician. In this instance, the administrative law judge provided a thorough explanation for rejecting the limitations on sitting, standing, reaching, etc., assessed by Dr. Stark in light of the opinions of the other doctors who had examined plaintiff and the inconsistency of plaintiff's complaints with the medical evidence. In addition, the administrative law judge noted that plaintiff had provided no third party statements to social security that might have supported his subjective complaints, that the daily accounts he did submit demonstrated that he was capable of more physical activity than he had reported to the agency and that the record contained no evidence of emergency room visits or similar evidence related to uncontrolled pain or

11

increasing symptoms. AR 27.

Finally, plaintiff contends that the administrative law judge should have gone through the "checklist factors" if he was rejecting any part of Dr. Stark's assessment. The "checklist" to which he refers comes from 20 C.F.R. § 404.1527(c)(2)(i) and inquires into the nature and length of the *treating* relationship. It goes on to specify that when assessing the opinion of any medical source, the agency is to consider the amount of relevant evidence provided to support the opinion, the consistency of the opinion with the record as a whole and the specialization or lack of specialization of the source. As the administrative law judge explained, he found Dr. Stark's opinion inconsistent with the record as a whole to the extent that she limited plaintiff in sitting, standing and reaching, etc. and he took into account the amount of evidence supporting her opinion as compared to the amount contained the record as a whole. As a specialist, her opinion is to be given weight, but in this case, her opinion was rebutted in significant part by the opinions of other examining physicians, such as Carlsen and Chu.

## B. The UW-Stout Evaluation

The administrative law judge explained why he found the Division of Vocational Rehabilitation reports unpersuasive because they relied so heavily on plaintiff's subjective complaints, rather than on the medical record. He noted that plaintiff had told the division that at his last visit to a doctor a year earlier, he had not been released to work. Plaintiff had also said that his pain had increased, that he needed a cane and would also need back

surgery, that he had to lie down during the day and constantly change positions, that he could not stand, walk or drive for any length of time and that he had dyslexia. AR 580, 589. The administrative law judge observed that these reports did not conform to the medical evidence in the record and pointed out that the evaluator had access only to Dr. Stark's report. He noted that no medical evidence supported plaintiff's alleged need for a cane. AR 26. He noted in particular that the agency had reported that plaintiff seemed to be in pain and changed positions often, but that these actions were not supported by the medical evidence. AR 27.

Finally, the administrative law judge pointed out that the record contained no evidence to confirm plaintiff's statement that he had dyslexia, other than his own allegation. Moreover, plaintiff's employment history included both skilled and semi-skilled positions, which the administrative law judge believed made it unlikely that plaintiff was significantly limited by dyslexia. AR 21.

## C. Summary

A review of the administrative law judge's decision shows that he provided an extensive and persuasive explanation of his reasons for not giving controlling weight to Dr. Stark's assessment of plaintiff's residual functional capacity and for not giving any weight to the report from the Wisconsin Division of Vocational Rehabilitation. The record contains substantial evidence to support his conclusion that plaintiff was capable of a full range of light work and therefore, also capable of performing sedentary work. This finding

made it unnecessary for him to consider whether plaintiff had transferable job skills. SSR 82-41; 20 C.F.R. Pt. 404, Subpt. P, App. 2 (transferability of skills is not issue when individual is limited to light work and is high school graduate).

ORDER

IT IS ORDERED that plaintiff Michael J. Sheffield's motion for summary judgment, dkt. #8, is DENIED and the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, is AFFIRMED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 22d day of December, 2014.

BY THE COURT:

/s/
BARBARA B. CRABB
District Judge